1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

MICHAEL ANTHONY TODD,

CASE NO. 1:12-cv-02083-LJO-MJS (PC)

12

Plaintiff,

**FINDINGS AN RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

13

v.

14

P. JOHNSON, et al.,

15

Defendants.

**FOURTEEN (14) DAY OBJECTION DEADLINE**

16
17

**I.      PROCEDURAL HISTORY**

18

Plaintiff is a state prisoner proceeding pro se in this civil rights action brought

19

pursuant to 42 U.S.C. § 1983. The action proceeds against Defendants Doe, Harrington,

20

Johnson, Norton, and Weatherford on Plaintiff's Eighth Amendment failure to protect

21

claim. Defendants Harrington, Johnson, Norton and Weatherford have appeared in the

22

action. Defendant Doe has not been identified.

23

Defendants moved for summary judgment based on Plaintiff's failure to exhaust

24

administrative remedies. (ECF No. 70.) It was undisputed that Plaintiff did not timely and

25

properly exhaust administrative remedies with respect to his claims. (ECF Nos. 70, 84, &

26

87.) However, the motion nonetheless was denied due to disputes of material fact

27

regarding whether administrative remedies were "effectively unavailable" to Plaintiff.

28

(ECF No. 90.)

1    On May 29, 2015, the Court conducted an evidentiary hearing regarding these
2    disputed factual issues. See Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).
3    Plaintiff testified on his own behalf, and three correctional officers testified for the
4    defense. (See ECF No. 103.) Following the hearing, Plaintiff submitted Daily Planners
5    that had been discussed during the hearing. (See ECF No. 105.) Defendants timely
6    objected to these submissions. (ECF No. 106.)

7    The matter is submitted.

8    ## II.   LEGAL STANDARD

9    The Court should decide disputed factual questions relevant to exhaustion "in the
10   same manner a judge rather than a jury decides disputed factual questions relevant to
11   jurisdiction and venue." Albino, 747 F.3d at 1169-71. "If the district judge holds that the
12   prisoner has exhausted available administrative remedies, that administrative remedies
13   are not available, or that a prisoner's failure to exhaust available remedies should be
14   excused, the case may proceed to the merits." Id. at 1171.

15   The defendant bears the burden of raising and proving the absence of
16   exhaustion. Id. at 1169; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).
17   Exhaustion may be excused where administrative procedures were effectively
18   unavailable, prison officials obstructed attempts to exhaust, or the plaintiff was prevented
19   from exhausting because procedures for processing grievances were not followed. See
20   Sapp v. Kimbrell, 623 F.3d 813, 822-24 (9th Cir. 2010). Where a Plaintiff alleges that a
21   grievance or appeal was improperly screened, the inmate must establish "(1) that he
22   actually filed a grievance or grievances that, if pursued through all levels of
23   administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue
24   in federal court, and (2) that prison officials screened his grievance or grievances for
25   reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24.

26   ## III.   PLAINTIFF'S COMPLAINT

27   Plaintiff's claims concern acts that occurred at California State Prison, Corcoran
28   ("CSP-COR"). In brief summary, his relevant allegations are as follows:

Plaintiff is a member of the United Society of Aryan Skinheads ("USAS"), which forbids members from participating in prison politics or obeying orders issued by gangs. Defendants were aware of Plaintiff's USAS membership. Plaintiff alleges that Defendants ignored threats to his safety by placing him in a double cell on a group yard, despite his affiliation with USAS. As a result, Plaintiff was stabbed and, in a separate incident, attacked by other inmates. His allegations concern Defendants' conduct from February 10, 2010 to October 2, 2012. (ECF No. 12.)

## IV.   SUMMARY OF EVIDENCE PRESENTED

At the hearing, Plaintiff claimed that he attempted to appeal Defendants' actions as follows:

- On March 15, 2010, he submitted an appeal alleging that Defendants Johnson, Norton, and Doe set him up to be attacked by members of the Aryan Brotherhood gang. This appeal was never acknowledged.

- On March 21, 2010, he sent an inquiry to the Appeals Office asking whether his March 15, 2010 appeal had been received. The inquiry was not acknowledged.

- On March 28, 2010, he submitted a duplicate of the March 15, 2010 appeal. This appeal was never acknowledged.

- On April 4, 2010, he inquired about the March 15 and March 28, 2010 appeals, and his inquiry was not acknowledged.

- From January 31, 2011 to February 12, 2012 Plaintiff submitted several appeals and inquiries not relevant to the claims in the instant action. These appeals were not acknowledged.

- On October 21, 2012, Plaintiff submitted an appeal alleging that Harrington Weatherford, Mascarenas and Smith[1] set him up to be attacked by members of the Aryan Brotherhood gang. This appeal was not acknowledged.

---

[1] Claims against Defendant Mascarenas were dismissed. (ECF No. 29.) No one named Smith has ever been a party to this action. (ECF No. 12.)

3

1
2
- On October 28, 2012, Plaintiff submitted an inquiry regarding the October 21, 2012 appeal, but the inquiry was not acknowledged.

3
4
5
6
7
8
9
10
11
12
Plaintiff explained that he documented this appeal timeline in February 2014 when he prepared his proposed third amended complaint in this action.[2] He did so by referencing Daily Planners in which he claimed to have recorded all of the mail he sent out. Plaintiff no longer has the planners for the time period at issue here, and is unsure what became of them. He did not safeguard the planners because he did not think they would be considered admissible or credible in this action. He had no other evidence supporting this timeline, nor could he think of anything else that would corroborate his testimony. He attributed his lack of documentation in part to prison regulations and policies prohibiting copying of appeals except those submitted to the third level of review.

13
14
15
16
17
18
19
20
21
22
23
24
Plaintiff explained that his only means of submitting an appeal was to place it in an unsealed envelope in his cell door and hope to have it retrieved by an officer during third watch. There was a box in the rotunda of his housing unit where appeals could be deposited, but Plaintiff had no access to it because he always left his cell handcuffed behind his back and escorted by two officers. Plaintiff also was unsuccessful in attempting to submit his appeals through legal mail, although he had heard of other inmates doing so. Plaintiff did not recall which officers retrieved the alleged appeals at issue in this case, nor did he keep a record of which officers retrieved the appeals. He stated that at the time these appeals were submitted, he had only recently arrived at CSP-COR, and had no reason to believe they would be tampered with. Plaintiff argued that appeals taken from his door passed through many hands, giving rise to many opportunities for interference, before being delivered to the Appeals Coordinator.

25
26
Plaintiff submitted into evidence records of appeals unrelated to this case. Those records tend to show that the administrative appeal process is difficult, burdensome, and

27
28
---
[2] The proposed third amended complaint was never filed (ECF No. 82), but was admitted into evidence at the evidentiary hearing as a summary of Plaintiff's argument.

4

frequently frustrating for inmates. (See Exhs. P-1 through P-17.) For example, Plaintiff submitted appeals that were screened out due to missing attachments or not being on the correct form. Some of Plaintiff's appeals were, in Plaintiff's view, misclassified (e.g., as a property issue, rather than a staff complaint) and therefore not properly addressed. Others were cancelled as untimely although Plaintiff claims they were timely submitted. In some instances, Plaintiff was able to exhaust appeals despite these difficulties; in others, he was not. According to Plaintiff, these records reflect that it is easy for the prison to manipulate the appeals process to prevent inmates from filing suit.

Defendants in turn submitted into evidence numerous exhibits demonstrating Plaintiff's history of successes in filing administrative appeals. (Exhs. D-A through D-Y.) During Plaintiff's time at CSP-COR, he filed 22 non-medical appeals and had approximately 30 such appeals screened out. These appeals concerned a wide range of issues, including confiscated property and religious material, missing eyeglasses, interference with mail, requested dietary changes and contested trust fund withdrawals. Former Appeals Coordinator Tammy Campbell testified and characterized Plaintiff as a frequent user of the appeals system.

Ms. Campbell also testified that Plaintiff had various means of submitting his appeals: submitting them to staff members, placing them in institutional mail, or placing them in the appeals box in the housing unit rotunda. She was aware of no prohibitions on copying appeals. She had heard complaints from inmates of appeals not being filed, and explained that the appeals process was changed in 2011 (after the period relevant here) at least in part to address such complaints. Specifically, log numbers were given to appeals that were screened out, a new triplicate form was introduced on which inmates could raise concerns about potentially missing appeals, and provisions were made to ensure that supervisors picked up appeals daily and delivered them to the Appeals Office. Ms. Campbell denied that staff interfered with the appeals process and stated that staff was accustomed to having complaints filed against them.

Defense witness Ignacio Bueno testified that he was the supervisor for Plaintiff's

housing unit during the relevant period. Mr. Bueno testified that inmates could submit appeals by handing them to a sergeant or putting them in the appeals box when they went for a haircut. Only a sergeant could open the appeals box, and the box was emptied daily and its contents delivered to the appeals office. If an appeal was directed to a higher administrator, it could be placed in the legal mail bag. He conceded that most inmates submitted their appeals by placing them in an envelope in their cell door as Plaintiff claimed he did. His testimony regarding what occurred once such appeals were retrieved was somewhat conflicting. On the one hand, he testified that such appeals should be placed by the retrieving officer in the appeals box or given to the first watch sergeant and not placed in the mail bag. However, at another time he testified that three to four officers on the third watch would sort through the mail bag, retrieve appeals, and place them in the appeal box.

Mr. Bueno was aware of no prohibitions on copying appeals. He had heard few complaints of appeals not being processed. If an inmate believed his appeal had not been processed, he could cover up his cell window, refuse to come to the yard, or commit some other violation of policies and procedures to gain the attention of a supervisor.

Defense witness Ronald Bloomfield testified that he was a Correctional Counselor II Supervisor and Facility Captain in Plaintiff's housing unit during the relevant period. He testified that inmates could submit appeals by placing them in the appeals box or the institutional mail, or having them picked up from the inmate's cell by staff. An inmate who believed his appeal was not processed could request to speak with a supervisor or submit a request for interview.

Mr. Bloomfield stated that staff had appeals filed against them on a regular basis, and that no staff ever expressed concerns to him about being the subject of a complaint. However, the parties agreed that no one would wish to have a staff complaint placed in their personnel file.

Following the hearing, Plaintiff was afforded the opportunity to submit, and did

submit, his Daily Planners from 2013 and 2014 as evidence of his alleged habit of recording all appeal submissions. (ECF No. 105.) As represented by Plaintiff, the planners contain entries purporting to reflect dates on which Plaintiff submitted appeals (as well as other information not relevant here). Defendants objected on the ground Plaintiff failed to provide them with copies of the planners and, in any event, the planners are irrelevant. (ECF No. 106.)

Although copies of the planners were not provided to Defendants, the Court finds that Defendants had sufficient information regarding their content to lodge an appropriate objection. That objection is overruled. The planners are considered herein, but are given only the limited weight discussed below.

## V.    ANALYSIS

Plaintiff's claimed attempts to submit appeals, if accepted as true, are sufficient to show that administrative remedies were "effectively unavailable" to him. The purported appeals named the relevant Defendants and specified the conduct at issue in this case. They appear to have been timely submitted.[3] By all accounts, it was acceptable for Plaintiff to submit the appeals by placing them in an envelope in his cell door. If Plaintiff did, in fact, submit these appeals in such a manner, then he has established "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Sapp v. Kimbrell,

---

[3] During the evidentiary hearing, Defendants attempted to argue that the purported appeals were untimely. This issue is not properly before the Court at this time. Defendants had the opportunity to argue the timeliness of Plaintiff's alleged appeals on the motion for summary judgment, but did not do so. The matter then was referred back to the undersigned for an evidentiary hearing on disputed factual questions relating to exhaustion. (See ECF No. 90.) There is no factual dispute as to when Plaintiff claims to have filed these appeals. Thus, the question of whether they were timely would appear to present a legal, rather than factual question.

Additionally, the potential untimeliness of these appeals does not necessarily defeat Plaintiff's claims. If the appeals had been processed by the prison and rejected due to untimeliness, Plaintiff presumably would have had an opportunity to appeal that rejection. However, because the appeals allegedly were never processed, Plaintiff had no such opportunity. Thus, by failing to even process the appeals, the prison would have rendered any potentially available administrative remedies effectively unavailable to Plaintiff.

1   623 F.3d at 823-24. Accordingly, the Court must determine whether to credit Plaintiff's

2   claims regarding his attempted appeals.

3       The documentary evidence submitted by the parties ultimately has little bearing

4   on the Court's resolution of this issue. Plaintiff's evidence indicates that the appeal

5   process is difficult, cumbersome and frustrating. The Court acknowledges that this likely

6   is true. However, such evidence does not establish that the appeals process was

7   unavailable to Plaintiff, or that Plaintiff did, in fact, submit the appeals at issue here.

8       Defendants' evidence indicates that Plaintiff is experienced with the appeals

9   process and capable of submitting and exhausting administrative appeals. However, this

10  evidence does not substantially bolster the Defense case. It certainly tends to show that,

11  in at least some instances, the appeals process was available to Plaintiff. At the same

12  time, however, the Court finds it quite difficult to believe that an inmate so dedicated to

13  appealing issues as relatively minor as missing eyeglasses and the lack of fresh fruit[4]

14  would neglect to pursue appeals of official decisions that allegedly led to his being

15  stabbed and physically attacked.

16      Equally incomprehensible, however, is Plaintiff's claim that he recorded the

17  appeals at issue in his Daily Planner, then discarded or lost that planner, even after he

18  knew that exhaustion was an issue in this case and that he had no other corroborating

19  evidence. Such records would have provided some corroboration of Plaintiff's account.

20  Their casual destruction notwithstanding their importance leaves Plaintiff's claims less

21  than credible. The Daily Planners for 2013 and 2014 corroborate nothing more than that

22  Plaintiff at some more recent point in time made calendar entries of grievance events.

23  They cannot be said to meaningfully substantiate Plaintiff's claims he submitted specific

24  appeals from 2010 through 2012.

25      Most of the evidence presented on this issue is circumstantial and tends to

26  balance out. For example, evidence does support Plaintiff's claims that the grievance-

27

28  _____
    [4] The Court by no means wishes to denigrate the importance of these issues to Plaintiff. However, in
    relation to the physical injuries Plaintiff complains of here, they are relatively minor.

1   filing process was fraught with theoretical and practical obstacles and pitfalls (lack of

2   direct access to the claim filing box, a filing box in the control of people who presumably

3   would prefer not to have claims filed against them or their colleagues, Plaintiff's inability

4   to seal the claim envelope, confusing and perhaps contradictory responses to other

5   appeals). On the other hand, Plaintiff presented as a bright and knowledgeable

6   individual who was aware of the procedures and their drawbacks and arguably failed to

7   pursue steps available to him to protect against them (such as keeping permanent

8   records of appeals, advising others through the mail of his efforts as they occurred, or

9   seeking out a sympathetic officer. The Court is left with two major conflicting

10  imponderables: (1) that such a procedurally experienced and savvy individual as Plaintiff

11  would neglect to pursue such a substantial claim as that in issue here; versus, (2) that

12  such a procedurally experienced and savvy Plaintiff who doubted the integrity of the

13  appeals process would fail to take any steps whatsoever to corroborate the filing of his

14  appeal **and** then, knowing proof of exhaustion was an issue, dispose of the only

15  potentially corroborating evidence in existence.

16      The conflict may be irresolvable. However, it being admitted that Plaintiff did not

17  exhaust, it was incumbent upon Plaintiff to establish that his appeal was improperly

18  screened. Sapp, 623 F.3d at 823-24. The Court is unable to conclude that Plaintiff has

19  established that fact with credible, persuasive evidence. Given that failure, the Court is

20  unable to find Plaintiff's account to be credible, and accordingly concludes that Plaintiff

21  has failed to establish that administrative remedies were effectively unavailable to him.

22  **VI.    CONCLUSION AND RECOMMENDATION**

23      Based on the foregoing, the Court concludes that Plaintiff failed to establish that

24  administrative remedies were effectively unavailable to him.  Accordingly,  it  is  hereby

25  recommended that the action be dismissed for failure to exhaust administrative

26  remedies.

27      The findings and recommendation are submitted to the United States District

28  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

fourteen (14) days after being served with the findings and recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   July 27, 2015                        /s/ Michael J. Seng
                                          UNITED STATES MAGISTRATE JUDGE

10